UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JOSHUA WEINER,

Civil Action No.

        Plaintiff,

vs.

MASTERPHARM, LLC d/b/a
MASTERPHARM COMPOUNDING
PHARMACY, LIN LEUNG, DOMINIC
EDWIN REGALBUTO, BAUMAN MEDICAL
GROUP, P.A., and ALAN J. BAUMAN, M.D.,

        Defendants.

_____

## COMPLAINT AND JURY DEMAND

Plaintiff, JOSHUA WEINER, by and through his undersigned counsel, hereby submits this Complaint against Defendants, MASTERPHARM, LLC, D/B/A MASTERPHARM COMPOUNDING PHARMACY, LIN LEUNG, DOMINIC EDWIN REGALBUTO, BAUMAN MEDICAL GROUP, P.A., and ALAN J. BAUMAN, M.D. for compensatory damages, equitable relief, and such other relief deemed just and proper arising from personal injuries as a result of ingesting the product Finasteride Plus, also known as "FinPlus," and hereby alleges:

### INTRODUCTION

1.    This is an action for damages suffered by Plaintiff Joshua Weiner, as a direct and proximate result of Defendants' negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution,

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

labeling, and/or sale of the pharmaceutical drug Finasteride Plus (hereinafter referred as "Finplus").

2.      Plaintiff brings claims for compensatory damages, equitable relief and such other relief deemed just and proper arising from injuries as a result of ingesting FinPlus.

## JURISDICTION, AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount of controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are citizens of states other than the state in which the Plaintiff is a citizen of. Specifically, Plaintiff, JOSHUA WEINER is a resident of the State of Illinois and Cook County. Further, Defendants are respectively citizens of the State of New York, and Florida. At all times herein mentioned, Defendants engaged in interstate commerce in this judicial district in that they advertised, promoted, supplied, and sold certain pharmaceutical products, including FinPlus, to physicians, and the general public in this district. Venue is proper within this District pursuant to 28 U.S.C. § 1391 because it is a judicial district where Defendants are subject to personal jurisdiction in accordance with 28 U.S.C. § 1391(c).

## PARTIES

4.      Plaintiff, JOSHUA WEINER, is a resident of the State of Illinois and Cook County.

5.      Plaintiff Joshua Weiner was prescribed FinPlus in the State of Florida beginning in January 2, 2015 and continuing through April 29, 2020, and prescriptions for the drugs were filled and shipped to Plaintiff by Defendant Masterpharm,LLC from Richmond Hill, New York.

2

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

6.      At all times material to this Complaint, Defendant MasterPharm, LLC d/b/a MasterPharm Compounding Pharmacy ("MasterPharm") is a limited liability company organized under the laws of New York, with its principal place of business at 115-02 Liberty Avenue, Richmond Hill, New York 11419. Masterpharm is and was at all relevant times involved in the research, development, packaging, labeling, manufacturing, sales, marketing and/or introducing into interstate commerce and into the State of Florida directly or indirectly through third parties or related entities, its products, including Finplus.

7.      Defendant, MasterPharm, upon information and belief, agreed to provide and did ship the subject medication to Joshua Weiner in Florida and Illinois via a prescription given in the state of Florida, and the damages that arose from MasterPharm's negligence occurred in Illinois and Florida.

8.      At all times material to this Complaint, Defendant Lin Leung was an individual residing in Flushing, New York and employed by Defendant, MasterPharm, LLC d/b/a/ MasterPharm Compounding Pharmacy. Lin Leung is and was at all relevant times involved in the research, development, packaging, labeling, manufacturing, sales, marketing and/or introducing into interstate commerce and into the State of Florida directly or indirectly through third parties or related entities, its products, including Finplus.

9.      Defendant, Lin Leung, upon information and belief, supervised and/or participated in the compounding of the subject medicine which was sold to Plaintiff in Florida and shipped and provided to Joshua Weiner in Illinois and Florida, and the damages that arose from Lin Leung's actions occurred within the states of Illinois and Florida.

3

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

10.     At all times material to this Complaint, upon information and belief, Defendant Dominic Edwin Regalbuto was an individual residing in New Hyde Park, New York and was employed by Defendant, MasterPharm, LLC d/b/a/ MasterPharm Compounding Pharmacy. Dominic Edwin Regalbuto is and was at all relevant times involved in the research, development, packaging, labeling, manufacturing, sales, marketing and/or introducing into interstate commerce and into the State of Florida directly or indirectly through third parties or related entities, its products, including Finplus.

11.     Defendant, Dominic Edwin Regalbuto, upon information and belief, was at all times material to this complaint, doing business in the State of Florida and maintained an active license with the Florida Department of Health. Dominic Edwin Regalbuto supervised and/or participated in the compounding of the subject medicine which was sold to Plaintiff in Florida and shipped and provided to Joshua Weiner in Florida and Illinois, and the damages that arose from Dominic Edwin Regalbuto's actions occurred in the State of Illinois and Florida.

12.     At all apparent times, Defendants Leung and Regalbuto were agents and/or apparent agents, servants or employees of MasterPharm and were acting within the course and scope of their employment or agency. As such, MasterPharm is vicariously liable for the actions of Leung and Regalbuto.

13.     At all material times, Defendant Alan J. Bauman, M.D. ("Bauman"), was a medical doctor licensed in the state of Florida and in fact practicing medicine in Palm Beach County, Florida, and was at all relevant times involved in the sales, marketing and/or introducing into interstate commerce and into the State of Florida directly or indirectly through third parties or related entities, its products, including Finplus.

4

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

14.     Upon information and belief, at all relevant times, Defendant Bauman committed a tortious act within the State of Florida, causing injury within the State of Florida, and Illinois out of which act(s) these causes of action arise.

15.     At all material times, Defendant, Bauman Medical Group, P.A. ("BMG") was a Florida corporation organized and existing under the laws of the state of Florida, authorized to do and doing business in Palm Beach County, Florida, with its principal address in Palm Beach County Florida.

16.     At all apparent times, Bauman was an agent and/or apparent agent, servant or employee of BMG and was acting within the course and scope of his employment or agency. As such, BMG is vicariously liable for the actions of Bauman.

17.     At relevant times, all Defendants conducted regular and sustained business and engaged in substantial commerce and business activity in the State of Florida, which included but was not limited to selling, marketing and distributing its products including Finplus in Florida.

18.     Upon information and belief, at all relevant times, all Defendants expected or should have expected that their acts would have consequences within the United States of America including the State of Florida, and Defendants derived and derive substantial revenue from interstate commerce.

19.     Upon information and belief, at all relevant times, all Defendants, committed a tortious act within the state of Florida out of which act(s) these causes of action arise.

## FACTUAL BACKGROUND

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

20.     Defendants Bauman and BMG operated a physical retail store in the lobby of the building which houses Bauman's medical practice in Boca Raton, Florida. This store also operated a website found at http://shop.baumanmedical.com. Through this store, Bauman and BMG marketed, dispensed, distributed, shipped, promoted, packaged, sold and/or placed into the stream of commerce various prescription and non-prescription drugs and hair care products, including the Finasteride Plus which caused the injury which is the subject of this suit.

21.     At all material times, the pharmaceutical drug Finasteride Plus, hereinafter referred to as "FinPlus," which caused the injuries and damages to the Plaintiff, was compounded prepared, dispensed, distributed, packaged, placed into the stream of commerce, and delivered by MasterPharm, Leung, Regalbuto, Bauman, and BMG.

22.     At all material times, Bauman and BMG marketed and sold the subject FinPlus directly to Plaintiff and were thus in the chain of distribution of the subject defective product.

23.     At all material times hereto, Bauman and BMG's website, www.baumanmedical.com contained pages that advertised Compounded Finasteride FinPlus:



At all [1]

times     24.

Bauman    material

BMG's     hereto,

          and

          website,

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

[www.baumanmedical.com](www.baumanmedical.com) contained pages that advertised the "main benefits" of Compounded

Finasteride FinPlus as follows:



25.     At   all   material   times   hereto,   Bauman   and   BMG's   website,

[www.baumanmedical.com](www.baumanmedical.com), contained a page that represented consumers could purchase FinPlus

only through BMG to Bauman patients:

> **How can I receive a prescription for Compounded Finasteride "FinPlus"?** [3]
>
> Compounded Finasteride "FinPlus" can only be prescribed to patients of Bauman Medical Group who have been evaluated by Dr. Bauman.

### PLAINTIFF'S USE OF FINPLUS

---

[2] https://www.baumanmedical.com/product/compounded-finasteride-finplus/
[3] https://www.baumanmedical.com/product/compounded-finasteride-finplus/

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

26.     On or about January 2, 2015, Plaintiff Joshua Weiner, had an office consultation with Bauman in Palm Beach County, FL regarding his hair regrowth treatment. At that time, Bauman recommended and prescribed to Plaintiff FinPlus, an oral prescription for hair regrowth, sold to Plaintiff with a 3 month supply.

27.     The active ingredient in FinPlus is Finasteride. Finasteride is also the active ingredient in Propecia, an FDA-approved drug for hair regrowth, which has been safely used since 1997 in the Unites States and has been available in generic form, at a much lower price than the brand name product, since 2006.

28.     When Bauman prescribed Finplus to Mr. Weiner in 2015, Bauman recommended he use FinPlus, prepared by MasterPharm and sold directly by BMG. Bauman told Joshua Weiner that there were alternatives to FinPlus, but suggested FinPlus was a proprietary product made specifically for his clients that would produce better results than the alternative options. Based on Bauman's recommendation, Plaintiff agreed to purchase FinPlus from Bauman and BMG's store – the only place where he understood he could secure the product compounded and prepared by MasterPharm, Leung, and/or Regalbuto.

29.     Plaintiff purchased FinPlus directly from Bauman and BMG's store in 3-month supplies beginning on January 2, 2015 and continuing through April 29, 2020. In that time period, Joshua Weiner solely purchased Finplus and only saw Bauman one more time on a separate scalp trichology consultation in August 2015. All Altogether, Joshua Weiner purchased $3,504 worth of Finplus (including shipping and handling of product) from Bauman and BMG's store. In contrast, Plaintiff was charged $175.00 for the 2015 initial and scalp consultations. Given the foregoing, the distribution of FinPlus, as well as the other products sold by Bauman

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

and BMG to Plaintiff, was and is a distinct part of Bauman and BMG's business, and the sales and distribution aspect of Bauman's interaction with Plaintiff clearly predominated over the services aspect of his consultation.

30.     Unbeknownst to Plaintiff, at some time during March 2020, MasterPharm, Leung and/or Regalbuto shipped him a contaminated batch of FinPlus, Lot Number 02-27-20:04@11 ("Contaminated FinPlus"). The Contaminated FinPlus contained undeclared minoxidil, an antihypertensive drug, at levels greater than those found in FDA-approved products. The Contaminated FinPlus was prepared and/or supplied by MasterPharm, Leung and/or Regalbuto and sold directly to Plaintiff by Bauman and BMG. Instead of containing all the expected concentrations of the drugs and ingredients indicated on its labeling, due to the actions of Defendants MasterPharm, Leung and/or Regalbuto, the Contaminated FinPlus contained an unreasonably dangerous concentration of minoxidil.

31.     In March and April 2020, Joshua Weiner consumed the Contaminated FinPlus in Florida. As a result of his consumption of this Contaminated FinPlus, Weiner suffered serious symptoms causing grievous concern for Weiner in Florida. In June 2020, Weiner went for a cardiology evaluation at the earliest possible date, and received an examination, EKG, and blood work, which noted both an increase in blood pressure and cholesterol, both higher than they have been historically. Weiner also suffered other medical conditions from use of the medication which caused him disability.

32.     On or about April 21, 2020, Mr. Weiner's mother received a call from Masterpharm advising him of the recall. Plaintiff Weiner immediately stopped taking the contaminated FinPlus.

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

33.     On or about April 22 and April 29, 2020, Plaintiff Weiner contacted Dr. Bauman's office for information regarding the recall. Weiner spoke to Bauman's employee Trina twice who informed him that he had been possibly taking FinPlus that had been contaminated with minoxidil,  and who offered a prescription of the generic finasteride.

<u>**COUNT I – NEGLIGENCE CLAIM AGAINST DEFENDANTS,**</u>
<u>**MASTERPHARM, LEUNG, REGALBUTO, BAUMAN, and BMG**</u>

34.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1-33 above.

35.     Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG were jointly engaged in the business of supplying, distributing, designing, manufacturing, compounding, mixing, preparing, developing, packaging, distributing, and/or selling products, including the FinPlus purchased and used by the Plaintiff, that Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG, knew would be used and consumed by the public.

36.     Defendants, Bauman and BMG designed, manufactured, mixed, created, developed, distributed and/or sold the FinPlus purchased and used by Plaintiff.

37.     Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG, designed, manufactured, mixed, created, developed, and/or distributed, the FinPlus purchased and used by Plaintiff.

38.     Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG, knew, or in the exercise of reasonable care should have known, that the Contaminated FinPlus was not properly designed, manufactured, compounded, mixed, made, tested, inspected, and/or sold, and knew, or, in the exercise of reasonable care, should have known, that the Contaminated FinPlus created an

10

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

unreasonable risk of harm to persons, like Plaintiff.

39.     Defendants MasterPharm, Leung, Regalbuto, Bauman, and BMG, owed a duty to Plaintiff, and the consuming public, to design, make, manufacture, and/or test its FinPlus, including the Contaminated FinPlus, in such a manner that it would be as described, safe, and not pose an unreasonable risk of harm to the life and safety of Plaintiff, and the consuming public when utilized in normal and foreseeable situations and in normal and foreseeable ways.

40.     Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG, owed a duty to Plaintiff and the consuming public to distribute and sell FinPlus, including the Contaminated FinPlus, in such a manner that it would be safe and not pose an unreasonable risk of harm to the life and safety of Plaintiff and the consuming public when utilized in normal and foreseeable situations and in normal and foreseeable ways.

41.     Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG owed a duty to Plaintiff and the consuming public to test the FinPlus it distributed and/or sold, to confirm they would be safe and not pose an unreasonable risk of harm to the life and safety of the Plaintiff and the consuming public when utilized in normal and foreseeable situations and in normal and foreseeable ways.

42.     Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG, owed a duty to convey to consumers and users, a fair and adequate warning of the dangerous characteristics of the Contaminated FinPlus so that the users, in the exercise of reasonable care, would have fair and adequate notice of the possible adverse consequences of using the subject FinPlus.

43.     Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG, negligently designed, manufactured, compounded, mixed, made, created, tested, marketed, inspected,

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

distributed, and/or sold the FinPlus in some and/or all of, but not limited to, the following respects:

a.  The Contaminated FinPlus was not reasonably fit for the uses intended or the uses reasonably foreseeable by Defendants.

b.  The Contaminated FinPlus was in a condition unreasonably dangerous to Plaintiff in that said drug failed to perform as safely as an ordinary consumer would expect when used as intended.

c.  The Contaminated FinPlus was in a condition unreasonably dangerous to Plaintiff in that said drug contained a dangerously high level of minoxidil.

d.  The Contaminated FinPlus was in a condition unreasonably dangerous to Plaintiff in that it contained a toxic substance at levels that could harm, injure, or kill people who utilized this drug.

e.  The Contaminated FinPlus was in a condition unreasonably dangerous to Plaintiff in that said drug endangered consumers when used, creating an unreasonable risk of harm, injury, or death.

f.  The Contaminated FinPlus and its labeling failed to disclose the presence of minoxidil and the dangerously high levels of same.

g.  The Contaminated FinPlus was contaminated with dangerously high levels of minoxidil.

h.  The Contaminated FinPlus lacked reasonable and adequate warnings to users as to the dangerous propensities of its ingredients.

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

  i. The Contaminated FinPlus lacked warnings that were reasonably sufficient in size, placement, prominence, and in the manner in which said warnings were conveyed to users of the drug as to its dangerous propensities.

  j. The Contaminated FinPlus was designed, manufactured, made, distributed and sold using unsafe ingredients and substances.

  k. The Contaminated FinPlus was designed, manufactured, made, distributed, and sold using a toxic ingredient, at toxic levels, which presented an unreasonable risk of harm, injury, or death.

  l. The Contaminated FinPlus was designed, manufactured, made, marketed, distributed, and sold in a manner that when used in the normal course and as directed, could result in harm, injury, or death.

  m. The Contaminated FinPlus was not subjected to appropriate safety testing prior to being distributed, marketed, sold, or otherwise placed in the stream of commerce.

  n. Defendants failed to determine fitness and/or merchantability of the Contaminated FinPlus that was manufactured, distributed, sold, or supplied knowing the product would be used in humans.

  44. As a direct and proximate result of the above-described negligence of the Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG, Mr. Weiner has suffered severe and painful and permanent medical conditions which have in the past and will in the future result in: pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, psychological and/or emotional pain and suffering as well as past and future expenses of medical and nursing care and treatment. The losses are either permanent or

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

continuing in nature, and Mr. Weiner will likely continue to suffer into the future.

45.     As a further direct and proximate result of the defective product and careless actions and conduct of Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG, Plaintiff Joshua Weiner has in the past and will in the future undergo painful and extensive medical care and treatment and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries as a result of the events described herein.

46.     As a further direct and proximate result of the defective product and the aforementioned careless actions and conduct of the Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG, Plaintiff Joshua Weiner has in the past sustained and will in the future sustain loss of earnings capacity.

Wherefore, Plaintiff Joshua Weiner demands judgment against Defendants, MasterPharm, Leung, Regalbuto, Bauman, and BMG, in an amount in excess of seventy five Thousand Dollars ($75,000), together with interest and costs, which are prayed for in addition thereto, and further demands trial by jury on all issues so triable.

## COUNT II- STRICT LIABILITY CLAIM AGAINST DEFENDANTS, MASTERPHARM, BAUMAN, and BMG

47.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1-33 above.

48.     Defendants MasterPharm, Bauman, and BMG, were jointly engaged in the business of designing, manufacturing, compounding, mixing, making, creating, packaging, marketing, advertising, distributing, and/or selling FinPlus (including the contaminated FinPlus purchased and used by Plaintiff), which Defendants knew would be purchased and used by the

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

general public.

49.     Defendants MasterPharm, Bauman, and BMG, designed, manufactured, compounded, mixed, made, created, packaged, tested, inspected, distributed, and/or sold the Contaminated FinPlus, which was purchased and used by Plaintiff in accordance with the usage directions.

50.     In or about March 2020 (and before the warnings were relayed to Plaintiff Joshua Weiner in late April 2020), Plaintiff consumed the Contaminated FinPlus for the purposes for which it was intended and, in a manner, reasonably foreseeable to Defendants MasterPharm, Bauman, and BMG.

51.     Defendants MasterPharm, Bauman, and BMG designed, manufactured, compounded, mixed, made, created, packaged, inspected, tested, distributed, and/or sold the Contaminated FinPlus in a manner which rendered the said drug defective and unsafe for its intended use or reasonably foreseeable use by Defendants.

52.     Defendants MasterPharm, Bauman, and BMG designed, manufactured, compounded, mixed, made, created, packaged, inspected, tested, distributed, and/or sold the Contaminated FinPlus in a manner which rendered the drug defective and unsafe for its intended use in that the Contaminated FinPlus failed to perform as safely as an ordinary consumer would expect when used as intended.

53.     Defendants MasterPharm, Bauman, and BMG designed, manufactured, compounded, mixed, made, created, packaged, inspected, tested, distributed, and/or sold the Contaminated FinPlus in a condition unreasonably dangerous to Plaintiff in that said drug contained levels of minoxidil that could harm, injure or kill people who utilized it, thus rendering

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

the Contaminated FinPlus defective and unsafe for its intended use.

54.     Defendants MasterPharm, Bauman, and BMG designed, manufactured, compounded, mixed, made, created, packaged, inspected, tested, distributed, and/or sold the Contaminated FinPlus with a label that failed to disclose the presence of any minoxidil, let alone dangerously high levels of same, thus rendering the Contaminated FinPlus defective and unsafe for its intended use.

55.     Defendants MasterPharm, Bauman, and BMG failed to subject the Contaminated FinPlus to appropriate safety testing prior to and after being distributed, marketed, sold, or otherwise placed into the stream of commerce, thus rendering the Contaminated FinPlus defective and unsafe for its intended use.

56.     The Contaminated FinPlus was defective when it left the possession of Defendants and was expected to, and did reach, the user/consumer without substantial change in its condition.

57.     Defendants MasterPharm, Bauman, and BMG's design, manufacturing, compounding, making of, creation of, testing, inspection, distribution, marketing and/or sale of the Contaminated FinPlus caused the defective and unsafe condition as described and alleged herein, which was the proximate cause of the injuries described and alleged herein, and, thus, Defendants are strictly liable in tort to Plaintiff.

58.     As a direct and proximate result of the conduct described herein, Defendants MasterPharm, Bauman, and BMG, and the above-described condition of the Contaminated FinPlus, the incident described herein occurred and Plaintiff was severely injured, resulting in pain and suffering, disability, disfigurement, physical impairment, inconvenience, mental

16

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

anguish, loss of enjoyment of life, psychological and/or emotional distress. As a direct result thereof, Plaintiff has in the past suffered and will in the future suffer great physical and mental pain and suffering, loss of the capacity of the enjoyment of life, all of which conditions are permanent and will continue into the future.

59.     As a further direct and proximate result of the defective product and careless actions and conduct of Defendants, MasterPharm, Bauman, and BMG, Plaintiff Joshua Weiner has in the past and will in the future undergo painful and extensive medical care and treatment and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries as a result of the events described herein.

60.     As a further direct and proximate result of the defective product and the aforementioned careless actions and conduct of the Defendants, MasterPharm, Bauman, and BMG, Plaintiff Joshua Weiner has in the past sustained, and will in the future sustain loss of earnings capacity.

WHEREFORE, Plaintiff, Joshua Weiner, demands judgment against Defendants, MasterPharm, Bauman, and BMG, for damages and demands judgment in excess of Seventy Five Thousand Dollars ($75,000), together with interest and costs, which are prayed for, and further demands trial by jury on all issues so triable.

## COUNT III – BREACH OF EXPRESS WARRANTY AGAINST DEFENDANTS, MASTERPHARM, BAUMAN, and BMG

61.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1-33 above.

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

62.     Defendants MasterPharm, Bauman, and BMG, were jointly engaged in the business of designing, manufacturing, compounding, mixing, making, creating, packaging, marketing, advertising, distributing, and/or selling FinPlus (including the Contaminated FinPlus purchased and used by Plaintiff), which Defendants knew would be purchased and used by the general public.

63.      Defendants expressly warranted to Plaintiff the following:

    a.  FinPlus was a safe and effective medication for the medical management of hair loss;

    b.  Finplus was reasonably fit for its intended purpose, the medical management of hair loss;

    c.  Finplus' "specially formulated" ingredients made the medication more effective at treating hair loss than the brand name alternative, Propecia, and generic alternatives;

64.     Indeed, as set forth in detail above, Defendants made numerous representations about the quality, safety, and effectiveness of Finplus which representations form express warranties to consumers, including Plaintiff Joshua Weiner.

65.     Plaintiff, Joshua Weiner, reasonably relied on Defendants' express warranties and representations that Finplus was safe, merchantable, and reasonably fit for its intended purpose in deciding to purchase and ingest Finplus for its intended use.

66.     Plaintiff, Joshua Weiner, purchased and ingested Finplus from Defendants based on the warranties and representations described herein regarding the safety and effectiveness of Finplus.

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

67.     The Contaminated Finplus, when placed into the stream of commerce by Defendants did not conform to these express representations because the device was contaminated with an unreasonably dangerous concentration of minoxidil.

68.     Defendants breached their express warranties because the Contaminated Finplus Plaintiff Joshua Weiner purchased and ingested was unreasonably dangerous and defective as described herein and not as Defendants had represented.

69.     As a direct and proximate result of the conduct described herein, Defendants MasterPharm, Bauman, and BMG, and the above-described condition of the Contaminated FinPlus, the incident described herein occurred and Plaintiff was severely injured, resulting in pain and suffering, disability, disfigurement, physical impairment, inconvenience, mental anguish, loss of enjoyment of life, psychological and/or emotional distress. As a direct result thereof, Plaintiff has in the past suffered and will in the future suffer great physical and mental pain and suffering, loss of the capacity of the enjoyment of life, all of which conditions are permanent and will continue into the future.

70.     As a further direct and proximate result of the defective product and careless actions and conduct of Defendants, MasterPharm, Bauman, and BMG, Plaintiff has in the past and will in the future undergo painful and extensive medical care and treatment and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries as a result of the events described herein.

71.     As a further direct and proximate result of the defective product and the aforementioned careless actions and conduct of the Defendants, MasterPharm, Bauman, and BMG, Plaintiff has in the past sustained, and will in the future sustain loss of earnings capacity.

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

72.     Plaintiff notified Defendants of their breach of warranty prior to filing the instant action, including but not limited to correspondence dated March 11, 2021 and May 6, 2022.

WHEREFORE, Plaintiff, Joshua Weiner, demands judgment against Defendants, MasterPharm, Bauman, and BMG, for damages and demands judgment in excess of Seventy Five Thousand Dollars ($75,000), together with interest and costs, which are prayed for, and further demands trial by jury on all issues so triable.

### COUNT IV – BREACH OF IMPLIED WARRANTY AGAINST DEFENDANTS, MASTERPHARM, LEUNG and REGALBUTO

73.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1-33 above.

74.     Defendants Masterpharm, Leung and Regalbuto, were jointly engaged in the business of designing, manufacturing, compounding, mixing, making, creating, packaging, and distributing FinPlus (including the Contaminated FinPlus purchased and used by Plaintiff), which Defendants knew would be purchased and used by the general public.

75.      Defendants Masterpharm, Leung and Regalbuto impliedly warranted to Plaintiff the following:

    a.   They would compound the prescribed Finasteride Plus;

    b.   They would use due and proper care in filling the prescribed Finasteride Plus;

    c.   They would use proper methods in the compounding process;

    d.   The Finasteride Plus would not be infected with an adulterating foreign substance.

76.     Plaintiff, Joshua Weiner, reasonably relied on Defendants' implied warranties in deciding to purchase and ingest Finplus for its intended use.

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

77.     Plaintiff, Joshua Weiner, purchased and ingested Finplus based on the implied warranties described herein regarding the safety and preparation of Finplus.

78.     The Contaminated Finplus, when placed into the stream of commerce by Defendants, did not conform to these implied representations because proper methods were not used in the compounding process, Defendants Masterpharm, Lin and Regalbuto did not use due and proper care in preparing the FinPlus, the pills sent to and ingested by Plaintiff Weiner were not compounded Finasteride Plus, and the pills Plaintiff Weiner ingested were contaminated with an unreasonably dangerous concentration of minoxidil.

79.     Defendants Masterpharm, Lin and Regalbuto, by failing to ensure the Finasteride Plus was compounded properly, breached their implied warranties because the Contaminated Finplus Plaintiff Joshua Weiner purchased and ingested was unreasonably dangerous and defective as described herein, contained an unreasonably dangerous concentration of minoxidil, and was not as Defendants had impliedly represented.

80.     As a direct and proximate result of the conduct described herein, Defendants Masterpharm, Leung and Regalbuto, and the above-described condition of the Contaminated FinPlus, the incident described herein occurred and Plaintiff was severely injured, resulting in pain and suffering, disability, disfigurement, physical impairment, inconvenience, mental anguish, loss of enjoyment of life, psychological and/or emotional distress. As a direct result thereof, Plaintiff has in the past suffered and will in the future suffer great physical and mental pain and suffering, loss of the capacity of the enjoyment of life, all of which conditions are permanent and will continue into the future.

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

81.     As a further direct and proximate result of the defective product and careless actions and conduct of Defendants, Masterpharm, Leung and Regalbuto, Plaintiff has in the past and will in the future undergo painful and extensive medical care and treatment and has in the past incurred and will in the future incur medical bills and expenses attendant to the injuries as a result of the events described herein.

82.     As a further direct and proximate result of the defective product and the aforementioned careless actions and conduct of the Defendants, Masterpharm, Leung and Regalbuto, Plaintiff has in the past sustained, and will in the future sustain loss of earnings capacity.

83.     Plaintiffs notified Defendants Masterpharm, Leung and Regalbuto, of their breach of warranty prior to filing the instant action, including but not limited to correspondence dated March 11, 2021 and December 20, 2021.

WHEREFORE, Plaintiff, Joshua Weiner, demands judgment against Defendants, Masterpharm, Leung and Regalbuto, for damages and demands judgment in excess of Seventy-Five Thousand Dollars ($75,000), together with interest and costs, which are prayed for, and further demands trial by jury on all issues so triable.

### COUNT V – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, § 501.201 *et seq*, FLORIDA STATUTES, AGAINST DEFENDANTS, BAUMAN and BMG

84.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1-33 above.

85.     At all times relevant to this action, Defendants BMG and Bauman engaged in "trade or commerce" as defined in Section 501.203(8), Florida Statutes.

22

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

86.     At all times material to the Complaint, Bauman has formulated, directed, controlled, participated in, or had the authority to control, the acts and practices of BMG, including the acts and practices set forth in this Complaint.

87.     In connection with the sale of hair loss products, Bauman and BMG represented directly or indirectly, expressly or by implication, that Finasteride Plus was a more effective treatment for Plaintiff Joshua Weiner's condition that alternative options available on the market, including but not limited to Propecia and generic versions. Such representations include, but are not limited to, claims that the Finasteride Plus:

    a.   Contained 25% more of the pharmaceutical ingredient than Propecia which made the product more effective than Propecia;

    b.   Contained a sophisticated blend of herbs and nutrients that made Finasteride Plus more effective at hair regrowth than alternative options on the market, including but not limited to Propecia;

    c.   The herbs in Finasteride Plus were "organic" and "sustainably-sourced;" and/or

    d.   Finasteride Plus was a safe treatment for hair loss with no anticipated side effects.

88.     In connection with the sale of hair loss products, Bauman and BMG represented directly or indirectly, expressly or by implication, that Finasteride Plus was only available to patients of Bauman such that his store was the only location where Plaintiff Joshua Weiner could purchase Finasteride Plus.

89.     In truth and in fact, there were less expensive options in the market and available to Plaintiff Joshua Weiner.

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

90.     In truth and in fact, alternative options in the market available to Plaintiff Joshua Weiner were not less effective than the Finasteride Plus he purchased from Bauman and BMG.

91.     In truth and in fact, Bauman and BMG did not sufficiently ensure that the Finasteride Plus they advertised and marketed to Plaintiff Joshua Weiner was safe for his consumption.

92.     Defendants' deceptive statements and practices are likely to mislead consumers acting reasonably, including Plaintiff Joshua Weiner who purchased Finasteride Plus and other products from Bauman and BMG.

WHEREFORE, Plaintiff Joshua Weiner demands judgment against Defendants in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and further demand trial by jury on all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff, Joshua Weiner hereby demands a trial by jury of all of the issues triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

i.      Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

ii.     Awarding Plaintiff attorney's fees;

iii.    Awarding Plaintiff the costs of these proceedings; and

24

Joshua Weiner vs. MasterPharm, LLC, et al.
Plaintiff's Complaint

iv.      Such other and further relief as this Court deems necessary, just and proper.

DATED this 31st  day of Jnauary, 2023.

/s/Katherine Kiziah
Katherine Kiziah, Esquire
Florida Bar No. 17585
Attorney E-Mail: kkiziahteam@searcylaw.com
Secondary E-Mail:   KKiziah@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409
Phone: 561-686-6300
Fax: 561-383-9448
Attorney for Plaintiff

25